**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| 21st CENTURY NORTH AMERICAN | : | |
| INSURANCE COMPANY f/k/a | : | |
| AMERICAN INTERNATIONAL | : | CIVIL ACTION |
| INSURANCE, | : | |
|     Plaintiff, | : | No. 11-CV-3249 |
| | : | |
|              v. | : | |
| | : | |
| JOHN WOLFINGTON, DAVID | : | |
| GRAHAM, and JILL GRAHAM, | : | |
|     Defendants. | : | |
| | : | |

August __22__, 2012                                                                                                                            Anita B. Brody, J.

**MEMORANDUM**

      Plaintiff 21st Century North American Insurance Company f/k/a American International Insurance Company ("21st Century") brings this declaratory judgment action against Defendants John Wolfington ("Wolfington"), David Graham, and Jill Graham (collectively "the Grahams"), requesting that the court find that 21st Century has no duty to defend or indemnify Wolfington in a pending state court action brought against him by the Grahams. 21st Century has filed a motion for judgment on the pleadings. For the reasons set forth below, I will grant 21st Century's motion. I find the opinion of my colleague, Judge Baylson, in *USAA Cas. Ins. Co. V. Bateman*, No. 07-cv-3700, 2008 WL 4761718 (E.D. Pa. Oct. 30, 2008), persuasive, and my opinion largely tracks his.

**I. BACKGROUND**

On March 2, 2009, the Grahams purchased a house, owned by Wolfington and located at 801 Harriton Road, Bryn Mawr, Pennsylvania (the "Property"). On March 31, 2011, the Grahams sued Wolfington and other parties in the Court of Common Pleas, Montgomery County. In the state court complaint, the Grahams assert the following claims against Wolfington arising out of the events surrounding the purchase of the Property: fraudulent misrepresentation, negligent misrepresentation, negligence, breach of fiduciary duty, breach of warranty, breach of contract, and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.* *See* ECF No. 8-10 ("Grahams' State Ct. Am. Compl.") ¶¶ 13-15. Wolfington subsequently gave notice of the state court action to his insurer, 21st Century. 21st Century is currently providing a defense in that matter under a reservation of rights.

In the action before me, 21st Century seeks a declaration that it has no duty to defend or indemnify Wolfington in connection with the claims asserted by the Grahams in state court. On September 1, 2011, 21st Century filed a motion for judgment on the pleadings, contending that select provisions and/or exclusions in Wolfington's homeowners' policies and excess liability policy release it from any duty to defend or indemnify. On September 29, 2011, Wolfington responded to 21st Century's motion. ECF No. 11.[1] On October 7, 2011, 21st Century filed a reply in support of its motion. ECF No. 12. A summary of the Grahams' state court complaint and the relevant sections of Wolfington's insurance policies issued by 21st Century is set forth below.

---

[1] The Grahams answered 21st Century's amended complaint (ECF No. 2), but did not file a response to Plaintiff's motion for judgment on the pleadings.

**A. Facts Alleged in the Grahams' State Court Complaint**

In December 2008, the Grahams contacted Jody Kotler, a real estate agent with Fox and Roach L.P. d/b/a Prudential Fox & Roach ("Prudential"), to request her assistance in selecting and locating a home for the Grahams in Bryn Mawr, Pennsylvania. Grahams' State Ct. Am. Compl. ¶¶ 13-15. Eventually the Grahams settled on the house owned by Wolfington, located at 801 Harriton Road, Bryn Mawr, Pennsylvania (the "Property"). *Id*. ¶¶ 17-18. During January 2009, the Grahams and Wolfington negotiated the purchase price for the Property through their respective brokers, and, near the end of the month, Wolfington accepted an offer from the Grahams to purchase the Property. *Id*. ¶¶ 23-24.

In February 2009, Mrs. Graham traveled from London, England—where the Grahams then resided—to Bryn Mawr to visit the Property so that an inspection could be performed. *Id*. ¶ 25. While surveying the Property, Mrs. Graham asked Wolfington why the driveway of the Property abutting Morris Avenue had not been paved and contained grass on it. Wolfington indicated that the driveway had not been finished, but that a company had gravel ready to be delivered, and that the gravel could be laid at any time. *Id*. ¶ 26.

However, as early as 2004, Wolfington had been told by officials of the Township of Lower Merion ("the township") that the Property exceeded the maximum ratio of impervious coverage allowed by impervious surface zoning ordinances included in Chapter 155 of the Code of the Township of Lower Merion ("the Zoning Ordinances"). *Id*. ¶¶ 27-28. The Grahams maintain that, in order to comply with the Zoning Ordinances and be approved for occupancy, Wolfington caused portions of the pool deck, the driveway abutting Harriton Road, and gravel from the driveway abutting Morris Avenue to be removed. *Id*. ¶ 28. After the township's

3

approval, Wolfington caused portions of the driveway abutting Harriton Road to be repaved in secret, in violation of the Zoning Ordinances. *Id*.

The Grahams further claim that at the time of inspection and prior to the sale of the Property, Wolfington knew or should have known that the Property had numerous physical and mechanical defects including the following: leaking roof, leaking foundation, malfunctioning electrical and telephone systems, malfunctioning toilets, a non-functioning bathroom, missing tiles in the pool, a shortened pool deck that requires persons using the diving board to be under 200 pounds, malfunctioning pool heater, pipes in the garage that are not adequately insulated, roofing material that fails to conform to manufacturing specification and required replacement, and a cornice and dentil molding system made with medium density fiberboard and fasteners inappropriate for exterior elements (collectively, the "Defects"). *Id*. ¶ 29.

In late February 2009, the parties entered into a purchase and sale agreement for the Property, and on March 2, 2009, the Grahams took title to the Property. *Id*. ¶¶ 31-32. Prior to taking title to the Property, the Grahams received a 68 Pa. C.S.A. § 7303 real estate disclosure statement from Wolfington and his broker. The disclosure did not mention any existing or potential zoning violations or any physical defects in the property. *Id*. ¶ 33. However, after moving onto the property, the Grahams became aware, through speaking with neighborhood residents and local contractors, that the Property's past and current zoning violations were common knowledge in the community.

Upon discovery of the zoning violations and other physical defects, the Grahams filed suit in the Court of Common Pleas of Montgomery County against Mr. Wolfington, Prudential, and the real estate brokers, alleging that the partiers were aware or should have been aware of the

zoning violations and defects in the Property. The Underlying Plaintiffs therefore brought claims of fraudulent misrepresentation, negligent misrepresentation, negligence, breach of fiduciary duty (against only Prduential and the brokers), breach of warranty (against Mr. Wolfington), breach of contract, and violatios of Pennsyvania Unfair Trade Practices and Consumer Protection Law. The underlying litigation is currently ongoing.

In response to the suit, Wolfington requested a defense and indemnification for defense fees from 21st Century North American Insurance, pursuant to his homeowners insurance policy. The insurer advised Wolfington that it would defend him in the lawsuit under a full reservation of rights until there could be a judicial determination of its duties. 21st Century subsequently brought this declaratory judgment action, arguing that it had no duty to defend Wolfington in the underlying suit.

**B. The "Homeowners Coverage" Policy**

Forming the basis of this action is a "Homeowners Coverage" policy issued to Wolfington by 21st Century—specifically, policy number "AIG PCG 0004737181," effective December 1, 2008 through March 9, 2009 ("the Policy").[2] *See* ECF No. 3-1. The liability section of the Policy contains the following language:

---

[2] Wolfington had two other insurance policies through 21st Century: (1) a "Homeowners Coverage" policy, number "AIG PCG 0006483518," effective March 2, 2009 through March 2, 2010, and (2) an "Excess Liability" policy, number "AIG PCG 0004739014," effective December 1, 2008 through December 1, 2009. *See* ECF Nos. 3-2, 3-3. In their briefing, the parties agree that the applicable policy in this matter is the December 1, 2008 through March 9, 2009 "Homeowner's Coverage" policy. Regardless, for purposes of addressing this motion, there appears to be no material difference between these policies.

> [21st Century] will pay, [sic] damages an insured person is legally obligated to pay for personal injury or property damage caused by an occurrence covered by this policy anywhere in the world, unless stated otherwise or an exclusion applies.
>
> . . .
>
> We will pay the costs to defend an insured person against any suit seeking covered damages for personal injury or property damage, even if the suit is false, fraudulent, or groundless.

ECF No. 3-1 at 16.

The focus of much of the parties' dispute in this matter lies in the "Definitions" section of the Policy. In this section, "occurrence" is defined as follows:

> [1] A loss or an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which occurs during the Policy Period and results in personal injury or property damage; or
>
> [2] An offense, including a series of related offenses, committed during the Policy Period that results in personal injury or property damage.

ECF No. 3-1 at 9. "Property damage" is defined as "physical injury to, destruction of, or loss of use of tangible property and resulting loss of its use." *Id*. at 10.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to hear this case under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000. The Court has the authority to grant declaratory relief pursuant to 28 U.S.C. § 2201. Both parties agree that Pennsylvania law applies to this case.

Under Federal Rule of Civil Procedure 12(c), any party may move for judgment on the pleadings "after the pleadings are closed but within such time as not to delay the trial." Judgment on the pleadings shall only be granted if the moving party clearly establishes that there are no material issues of fact and that the moving party is entitled to judgment as a matter of law. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005). The court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.*

**III. DISCUSSION**

A. *Parties' Contentions*

In its motion for judgment on the pleadings, 21st Century contends that is has no obligation to defend or indemnify Wolfington in the underlying state court action. 21st Century makes five arguments as to why the factual allegations in the Grahams' State Court Complaint fail to give rise to a duty to defend or indemnify Wolfington under the Policy: (1) Wolfington's actions do not constitute an "occurrence"; (2) even if Wolfington's actions do constitute an "occurrence," the harms caused by the occurrence were not "property damage"; (3) the factual allegations are excluded from coverage under the Policy's "Intentional Acts" exclusions; (4) the factual allegations are excluded from coverage under the Policy's "Intentional Acts" exclusions regarding an insured gaining a profit to which he is not entitled;[3] and (5) the factual allegations are excluded from coverage under the Policy's "Business Pursuits" exclusions. I need not address

---

[3]This exclusion, as 21st Century notes, is only found in the "Excess Liability" policy, number "AIG PCG 0004739014," effective December 1, 2008 through December 1, 2009.

all of 21st Century's arguments, as I find that the factual allegations set forth in the State Court Complaint fail to constitute "property damage" as it is defined within the Policy.[4] As such, 21st Century has no duty to defend Wolfington in the Underlying Action.

B. *Analysis*

The interpretation of an insurance contract, including an analysis of coverage, is a question of law generally determined by the court.[5] *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 291 (Pa. 2007). The court's "primary goal in interpreting a policy . . . is to ascertain the parties' intentions as manifested by the policy's terms." *Kvaenrer Metals Div. Of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006). When the terms of the policy are unambiguous, they control, but when the terms are ambiguous, they must be interpreted in favor of the insured. *Donegal Mutual*, 938 A.2d at 290. The duty to defend under an insurance policy is broader than the duty to indemnify, in that the duty to defend is triggered whenever the allegations in a complaint may potentially come within the insurance coverage. *Lucker Mfg., Inc. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994). The insurer's duty to defend remains until the insurer is able to show that the factual allegations in the complaint, even if true,

---

[4] The parties strongly dispute whether Defendant Wolfington's alleged misconduct constitutes an "occurrence" under the Policy. I decline to reach this issue, however. Even assuming that Wolfington's alleged misrepresentations were an occurrence, they did not cause property damage and thus are not covered by the Policy.

[5] A federal court presiding over a case grounded in diversity jurisdiction must apply the choice-of-law rules of the forum state. *Klaxon v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941). There is no dispute among the parties concerning which law applies here, and so I will apply Pennsylvania law.

do not fall within the scope of the policy. *Id*. "If the complaint against the insured avers facts that would support a recovery covered by the policy, then coverage is triggered and the insurer has a duty to defend until such time that the claim is confined to a recovery that the policy does not cover." *Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997). In determining whether a duty to defend exists, a court must look only to the factual allegations made within the "four corners" of the underlying complaint, regardless of the particular causes of action. *Mutual Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999).

The Policy states that 21st Century "will pay, [sic] damages an insured person is legally obligated to pay for personal injury or *property damage caused by an occurrence* . . . ." ECF No. 3-1 at 16 (emphasis added). Wolfington concedes that the factual allegations in the State Court Complaint do not involve claims of personal injury. Therefore, for 21st Century's duty to defend to be triggered, the harm alleged to have occurred to the Property as a result of Wolfington's action (or inaction) must fall within the definition of "property damage" as set forth in the Policy.

"Property damage" is defined in the Policy as "physical injury to, destruction of, or loss of use of tangible property and resulting loss of its use." *Id*. at 10. 21st Century argues that the property damage to the residence alleged in the State Court complaint—specifically, that the Property was in violation of the Zoning Ordinances, the existence of the Defects, and that finishing construction of the driveway was prohibited by the Zoning Ordinances—existed at the time of the sale, and that Wolfington's alleged misconduct did not actually cause the property damage. In response, Wolfington notes that "property damage" includes "loss of use of tangible property and resulting loss of its use," and that the State Court Complaint alleges that as a result of Wolfington's negligence, the Grahams "have suffered significant damages in the form of

*inability to use* and enjoy the Property." Grahams' State Ct. Am. Compl. ¶ 58 (emphasis added). Additionally, Wolfington argues that the Grahams have alleged physical injury to tangible property based on their allegations that one bathroom is non-functional, that the shortened pool deck requires users of the diving board to be under 200 pounds, and that Wolfington repaved the driveway in violation of the Zoning Ordinance.[6]

The Pennsylvania Supreme Court does not appear to have ruled directly on the question of whether claims for misrepresentations in home sales are covered claims under liability insurance policies. However, as 21st Century points out, several other courts have held that claims alleging fraudulent or negligent misrepresentation surrounding a home sale are not claims for "property damage" under insurance policies similar to the applicable policy in this case. For example, *USAA Cas. Ins. Co. v. Bateman* concerned a similar declaratory judgment action between an insurer, its insured (home seller), and an injured party (home buyer) in which the underlying state court action between the home buyer plaintiff and home seller defendant involved allegations that the home seller defendant had failed to disclose defects in the sale of a house. No. 07-cv-3700, 2008 WL 4761718 (E.D. Pa. Oct. 30, 2008). The insurance policy at

---

[6] Although Wolfington characterizes the Grahams' complaint as alleging property damage for purposes of this declaratory judgment action, it should be noted that in his Preliminary Objections to Plaintiffs' Complaint filed in state court, *see* ECF No. 3-6, Wolfington asserts that "the crux of Plaintiffs' claim against Wolfington sounds in contract," *Id.* ¶ 39, and that the Grahams' tort claims are simply mislabled contract claims. "The gist of the action doctrine bars claims for allegedly tortious conduct where the gist of the conduct alleged sounds in contract rather than tort. ... Plaintiffs' tort claims against Wolfington for fraudulent misrepresentation..., negligent misrepresentation..., negligence...and violation of the Pennsylvania UTPCPL...are based upon the breach of representations specifically contemplated by the Agreement of Sale and barred as parol evidence." *Id.* ¶ 40, 43. Later in his Objection, Wolfington asserts, "Plaintiffs have not sustained nor have alleged any physical injury or property damage; thus, the economic loss doctrine bars their recovery in tort." *Id.*.

issue stated that "property damage" occurs when the occurrence causes "physical damage to, or destruction of tangible property, including loss of use of this property," *Bateman*, 2008 WL 4761718 at *8, a definition nearly identical to that in the 21st Century Policy before me. Applying Pennsylvania law, the *Bateman* court held that the underlying state court complaint did not fall within the scope of the insurer's duty to defend or indemnify. In granting the insurer's motion for summary judgment, the court relied in part on its finding that the harm alleged in the state court action did not constitute "property damage." It explained its reasoning as follows:

> The acts at issue in the underlying lawsuit amounted to a misrepresentation of the status of the home, whether it be intentional or negligent. At no point did [the home seller's] acts ever inflict damage on the home that was not already in existence prior to the acts in question. Similarly, the [home seller's] acts did not even limit the use of the home for the [home buyers]. While the alleged acts did impose on the [home buyers] some harm, the 'tangible property' here was not changed in any way by the misrepresentation. The house was in the same state prior to the sale as it was after the sale. The only harm that occurred was that the [home buyers] did not purchase the home they expected to purchase. This, however, does not constitute 'property damage.'

*Id.* Other courts outside the Third Circuit have held similarly. *See, e.g. Raines v. Safeco Ins. Co. of Am.*, 637 F. 3d 872, 876 (8th Cir. 2011) (holding, in case involving underlying state court allegations of negligent misrepresentation in the sale of house, that "the undisputed facts . . . do not suggest even a remote possibility of coverage under Kansas law," and stating that "the notion that [the home buyer's] reference to the property's condition converts her claim into one seeking recompense for 'property damage' is implausible, particularly in light of her allegations that she was injured by misstatements concerning the property's value"); *St. Paul Fire & Marine Ins. Co. v. Lippincott*, 287 F.3d 703 (8th Cir. 2002) (holding that, under Missouri law, a judgment for negligently misrepresenting the condition of a house's walls and foundation was not a liability for property damages); *Hartford Ins. Co. of the Midwest v. Wyllie,* 396 F.Supp.2d 1033

(E.D.Mo.2005) (holding that because any defects in the condominium at issue were in existence before the buyers' purchase of the property, the seller's alleged misrepresentations did not cause any property damage under the insurance policy). As one court put it, case law is "virtually unanimous" that damages flowing from misrepresentation in home sales "have no basis in property damage" but are "economic and contractual in nature and as such do not fall within the scope of coverage" of typical homeowners' insurance policies. *State Farm Fire and Cas. Co. v. Brewer*, 914 F.Supp. 140, 142 (S.D. Miss. 1996). Indeed, Defendant Wolfington fails to cite a single case that has found a seller's misrepresentations to cause "property damage" under a homeowner's insurance policy.

Simply put, "to find coverage existed in this case would be to find that based on an act of sale, a homeowner's insurance becomes the warrantor of the condition of the insured property." *Lawyer v. Kountz*, 716 So.2d 493 (La. App. 1998). I cannot fairly say that the parties intended such a broad interpretation of the insurance policy.

## IV. CONCLUSION

For the foregoing reasons, I will grant Plaintiff's motion for judgment on the pleadings.


    __S/ANITA B. BRODY,
    ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:     Copies **MAILED** on _____ to:

O:\ABB 2012\A - K\21st Century v. Wolfington Opinion re Judgment on the Pleadings.wpd